UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **KEITH BIAGAS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-1164** |
| **HORNBECK OFFSHORE SERVICES, LLC, SCHLUMBERGER TECHNOLOGY CORPORATION AND CHEVRON U.S.A., INC.** | **SECTION: "J" (5)** |

ORDER AND REASONS

Before the Court is Plaintiff's **Motion to Strike Jury Demand (Rec. Doc. 76)**. This motion is opposed by Defendants Schlumberger Technology Corporation ("Schlumberger") and Chevron USA, Inc. ("Chevron") and was set for hearing with oral argument on July 19, 2006.

**Factual Background**

Plaintiff, a roustabout employed by ENSCO Offshore Company, was injured after being transferred to the deck of the M/V HOS CROSSFIRE, owned by Defendant Hornbeck, to assist in the back-loading of a separator unit, owned by Defendant Schlumberger.

Schlumberger had contracted with Chevron to provide downhole well testing services and equipment for use on Chevron's Petronius platform, on which ENSCO's drilling rig was mounted. This platform was located on the Outer Continental Shelf.

After problems were encountered moving a heavy separator unit from one place to another on the platform, Chevron

1

instructed Schlumberger to install Teflon skids on the bottom of the unit to make it easier to move.  Chevron had had success with this in the past.  After the skids were installed, a Chevron consultant traveled offshore to discuss Chevron's suggested handling techniques and safety precautions with ENSCO and other personnel.  The Teflon material worked well.  After the well test operations were completed, the separator unit was back-loaded by ENSCO personnel onto a Hornbeck supply vessel.

After the unit was placed onto the deck of the vessel, the vessel maneuvered away from the platform.[1]  The heavy separator unit, equipped with Teflon skids, allegedly slid and pinned Plaintiff against another piece of equipment when the vessel encountered rough seas.  Schlumberger claims that the accident occurred during a break in the cargo operations to permit the landing of a helicopter on the platform.

In his reply, Plaintiff points out that Schlumberger and Chevron were both aware that the separator unit would be transported by vessel and that certain hazards existed when it was transported because the unit rested on Teflon skids.  Plaintiff points out that personnel from both Schlumberger and Chevron participated in a Job Safety Analysis meeting wherein they discussed the hazards of the unit's Teflon skids relative to

---

[1]  During oral argument on July 19, 2006, counsel for Plaintiff explained that the vessel was "crew-boating" and had moved away from the platform a distance to permit the landing of a helicopter onto the platform. He also explained that the vessel was not moored and was essentially "standing-by."  These assertions were not contradicted by defense counsel. Therefore, for the purposes of this motion, the Court accepts these allegations as true.

the transportation of the unit to the platform via a supply vessel.

## Procedural History

In April of 2004, Plaintiff filed his first Complaint against Hornbeck for his injuries, alleging general maritime law jurisdiction. (Rec. Doc. 1). Hornbeck answered and requested a jury; however, it later waived trial by jury. (Rec. Doc. 5). Hornbeck then filed a third party demand against Schlumberger under Rule 14(c) of the Federal Rules of Civil Procedure, which applies when a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h). Pursuant to Rule 14(c), a defendant may assert a third party claim and demand judgment against the third party defendant in favor of the plaintiff. (Rec. Doc. 37). In that event, the action proceeds as if the plaintiff had commenced it directly against the third-party defendant. Schlumberger answered the third party and Plaintiff's complaint. (Rec. Doc. 43). It did not request trial by jury. Thereafter, Plaintiff filed a second amended complaint, naming Chevron as a defendant and also filing a direct claim against Schlumberger. (Rec. Doc. 56). It was in their answer to the second amended complaint that both Schlumberger and Chevron requested trial by jury. (Rec. Doc. 64). Plaintiff then filed a third amended complaint, wherein he expressly designated his claim as an admiralty and maritime claim under Rule 9(h). (Rec. Doc. 73). A jury trial is not available to any party in an admiralty or maritime claim under Rule 9(h). Nonetheless,

Defendants Chevron and Schlumberger refuse to withdraw their jury demand. Hence, Plaintiff has filed the instant motion.

## The Arguments of the Parties

Plaintiff claims that Defendants are not entitled to a jury trial because his complaint alleges only a claim within the Court's admiralty jurisdiction. Plaintiff acknowledges that his first and second amended complaints did not specifically evoke Rule 9(h) (only his third complaint did); however, Plaintiff argues that he was not required to expressly state that his claims are admiralty claims under rule 9(h) according to Doucet v. Wheless Drilling Company, 467 F.2d 336 (5th Cir. 1972). Plaintiff further argues that Hornbeck apparently recognized there was no right to a jury trial when it withdrew its initial jury demand. Plaintiff further claims that Schlumberger acknowledged his right to proceed on the admiralty side of the Court when it did not request a jury trial in its answer to his original complaint, recognizing that it had been tendered as a direct defendant in an admiralty or maritime claim under Rule 14(c).

Defendant Schlumberger opposes this motion claiming that the second amended complaint contains only non-maritime-based claims against both it and Chevron - including claims for product liability, failure to warn, and negligence. Schlumberger asserts that Plaintiff's claims lack a substantial connection to traditional maritime activity sufficient to trigger admiralty jurisdiction. Schlumberger acknowledges that Plaintiff's claims

4

against Hornbeck obviously fall within this court's admiralty jurisdiction, as they relate to the improper handling of the vessel in rough seas.

Schlumberger cites Texaco Exploration & Production, Inc. v. Amclyde Engineered Products Co., 448 F.3d 760, corrected on rehearing, 2006 U.S. App. LEXIS 15879 (5th Cir. 2006), and argues that the Fifth Circuit recently rejected the invocation of admiralty jurisdiction in a case that involved products liability claims on the Outer Continental Shelf, finding that the plaintiff's causes of action were insufficiently connected to traditional maritime activity to support the application of admiralty law because the accident did not occur while the transportation function of the vessel was being utilized.  It occurred during construction of a platform on the Outer Continental Shelf.

Schlumberger argues that neither it nor Chevron had any involvement in the transfer of the separator unit from the platform to the vessel.  Instead, it asserts that ENSCO and Hornbeck were responsible for the transfer.  It states that the separator unit was used exclusively on the platform.  It argues that the maritime nature of the activities that took place is "eclipsed" by the platform-based product liability claims asserted against both Schlumberger and Chevron.

Further, Schlumberger asserts that the Outer Continental Shelf Lands Act ("OCSLA") furnishes an alternative basis for federal jurisdiction and right to a jury trial, as the activities

took place on the Outer Continental Shelf and involved the exploration and development of minerals on the Outer Continental Shelf.  Schlumberger argues that where there is an alternative basis for federal jurisdiction over a state law claim (like OCSLA in this case), trial by jury is available. See <u>Tallentire v. Offshore Logistics, Inc.</u>, 754 F.2d 1274, 1287 (5th Cir. 1985, <u>rev'd on other grounds</u>, 477 U.S. 207 (1986), <u>on remand</u>, 800 F.2d 1390 (1988)

Chevron filed an opposition, specifically adopting Schlumberger's arguments.[2]

In his reply, Plaintiff claims that Schlumberger's argument that it and Chevron had nothing to do with the transportation of the modified equipment is belied by the circumstances of the accident and the meeting wherein both Schlumberger and Chevron discussed the risks associated with transporting it.  Plaintiff also disputes that the <u>Texaco</u> case is applicable to this case.

## Discussion

The <u>Texaco</u> case is distinguishable from this case.  In <u>Texaco</u>, a crane manufacturer was sued, for furnishing an unreasonably dangerous product and for failing to warn of its

---

[2]  The Court notes that Chevron was the time charterer of the vessel. A time charterer owes "a hybrid duty" arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control.   "[T]he traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment." <u>Hodgen v. Forest Oil Corp.</u>,87 F.3d 1512, 1520 (5th Cir. 1996).  The factual allegations by plaintiff appear to implicate Chevron's conduct as vessel charterer, not as platform owner.

known hazards, after a derrick barge dropped and lost a section of a platform deck during construction of the Petronius structure (ironically, the same platform involved in this case).  Texaco, as plaintiff, alleged federal jurisdiction under OCSLA and, alternatively, in admiralty.  The district court concluded that Texaco's claims fell exclusively under the court's admiralty jurisdiction and could not, also or in the alternative, be grounded upon OCSLA's jurisdictional grant in § 1349(b)(1). The court determined that admiralty law exclusively applied, and therefore, extinguished the right to a jury trial.

The Fifth Circuit reversed, concluding that the underlying facts and the nature of the torts alleged brought Texaco's cause of action within OCSLA's provisions for federal subject matter jurisdiction. The Fifth Circuit found that Plaintiff's causes of action were insufficiently connected to traditional maritime activity to support the application of admiralty law. The Court explained:

> * * * the undisputed facts demonstrate that traditional maritime transportation was complete at the time of the loss. The DB-50 was in position, had already installed the North Deck Module, and was lifting-not transporting-the South Deck Module into position for installation. In submissions to the district court, [the defendant] characterized the accident as occurring while McDermott lifted the deck module into place after having "successfully placed the north deck module," and in its Answer and Cross-Complaint, [the defendant] referred repeatedly to the conduct at the time of the accident as "the Petronius module lift." The parties' own characterization of

> the events surrounding the loss of the South Deck
> Module reveals that Texaco's cause arises out of
> and in connection with the development of the
> Outer Continental Shelf. See § 1349(b)(1).

Id. at 769. The Fifth Circuit reasoned that the harm in Texaco arose directly from the construction of the Petronius compliant tower, a fixed platform expressly covered by OCSLA's terms, and would not have occurred but for the development of the Outer Continental Shelf in the form of the Petronius compliant tower's construction.

There are important factual distinctions here that make the Texaco case inapplicable. In Texaco, the accident occurred *after* the vessel's transportation function had ended and *during* the offloading of a module *onto* a fixed platform under construction. Here, the offloading of the Schlumberger unit from the fixed platform had ended and the equipment had been placed on the deck of a vessel. After the unit had been placed on the deck of the vessel, the vessel maneuvered some distance away from the platform. In the course of moving away from the structure, Plaintiff alleges that he was injured when the cargo shifted because it was not properly secured on the deck. This Court concludes that this case falls squarely within the Court's admiralty jurisdiction as it involves a traditional maritime activity - the stowage of cargo being transported aboard a vessel.

Also, this Court rejects Schlumberger's assertion that OCSLA

furnishes an alternative basis for federal jurisdiction and right to a jury trial - as in the Texaco case.  This act provides, in pertinent part:

> (b)(1) Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . .

43 U.S.C. § 1349(b)(1)(A). In the Texaco case, the plaintiff expressly alleged OCSLA as the primary basis for federal jurisdiction.  However, contrary to the plaintiff in the Texaco case, Plaintiff here did not specifically plead OCSLA as a basis for jurisdiction in any of his complaints; in fact, he only pled admiralty jurisdiction and jurisdiction under 905(b) of the LHWCA.[3]  In Becker v. Tidewater, Inc., 405 F.3d 257 (5th Cir. 2005), Becker originally alleged claims under the Jones Act, and asked for a jury trial.  In the alternative, Becker asserted claims under 905(b) and general maritime law.  After a jury returned a verdict in favor of plaintiff on the Jones Act claim, the Fifth Circuit reversed, finding that Becker was not a seaman

---

[3]     The Longshore and Harbor Workers' Compensation Act ("LHWCA") 33 U.S.C. § 905(b), preserves to covered workers a third-party claim in the event of injury caused by the negligence of a vessel. Federal jurisdiction of 905 (b) claims is based on general maritime law and, accordingly, assertion of a 905(b) claim confers no more right to a jury trial than does any other claim within the court's admiralty jurisdiction. Russell v. Atlantic & Gulf Stevedores, 625 F.2d 71, 72 (5th Cir. 1980); Duplessis v. Daybrook Fisheries, Inc., 2004 WL 764197 (E.D. La. 2004).

as a matter of law, and thus had no remedy under the Jones Act. The case was remanded to the trial court for further proceedings on the 905(b) and general maritime claims.  On remand, the trial court granted Becker leave to amend his complaint to expressly assert a Rule 9(h) declaration, under which he asked for a bench trial on his remaining claims.  The defendant objected, claiming a right to a jury trial because there was in fact diversity jurisdiction present.  On interlocutory appeal, the Fifth Circuit affirmed the decision of the district court and ruled that the defendant had no right to a jury trial.  The Fifth Circuit noted that Becker had never asserted diversity jurisdiction, or any other basis of federal jurisdiction that would entitle the defendant to a right to a jury trial under the Seventh Amendment. The appeals court further noted that although diversity jurisdiction existed factually, it was well settled that the plaintiff is the master of his complaint, and Becker had the exclusive power to invoke diversity jurisdiction.  Because Becker had never invoked the court's diversity jurisdiction, the possible factual existence of diversity did not give rise to the legal existence of diversity jurisdiction.

   Here, because Plaintiff did not plead OCSLA as a basis for jurisdiction (as the plaintiff in Texaco did), Defendants cannot now claim that a right to a jury trial exists on that basis. Moreover, the plaintiff's injuries allegedly arose from a

10

traditional maritime activity – the stowage and transport of cargo aboard a vessel in navigable waters.  These claims fall squarely under the Court's admiralty and maritime jurisdiction.  Accordingly,

**IT IS ORDERED** that  Plaintiff's **Motion to Strike Jury Demand (Rec. Doc. 76)** should be and hereby is **GRANTED**.

New Orleans, Louisiana this  3rd day of August, 2006.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE